**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Sharon Few


      v.                                 Civil No. 06-cv-427-SM


Liberty Mutual Insurance Co.,
Liberty Life Assurance Co., et al.[1]


**REPORT AND RECOMMENDATION**


       Before the Court is the complaint[2] of plaintiff Sharon Few,

who has filed suit against Liberty Mutual Life Insurance Company

and Liberty Life Assurance Company (hereinafter referred to

collectively as "Liberty defendants"), and several Liberty

employees.  Few's claims allege violations of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et

---

     [1]Although not named in the heading of Few's complaint, the
narrative of the complaint alleges sufficient facts against
Jolene Knight-Ballou, Linda Stalk, and Wayne Evans for me to find
that Few intended to name Knight-Ballou, Stalk, and Evans as
defendants to this action.  Accordingly, I will consider them to
be properly named defendants to this action and direct that the
appropriate claims be served on them as directed in the Order
issued simultaneously with this Report and Recommendation.

     [2]Few, a resident of Virginia, originally filed her complaint
in the United States District Court for the Eastern District of
Virginia.  That Court determined that venue was proper in the
District of New Hampshire and transferred the matter here.

seq., the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, et seq., federal constitutional and statutory prohibitions against discrimination based on age and race, the federal constitution, the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., and a number of rights arising under the laws of various states.

As Few is proceeding both pro se and in forma pauperis, the complaint is before me for preliminary review. See United States District Court for the District of New Hampshire Local Rules ("LR") 4.3(d)(1)(B).  For the reasons stated below, I recommend dismissal of the FOIA, age discrimination, race discrimination, federal constitutional claims, and State law claims alleging violations of the Insurance Act, breach of contract, wrongful termination, defamation, slander, libel, and general violations of unspecified rights under New Hampshire, Virginia, Washington, Oregon, and Florida law from this action.  In an Order issued simultaneously with this Report and Recommendation (hereinafter the "Simultaneous Order"), I direct that the ERISA and intentional infliction of emotional distress claims be served against defendants Liberty Mutual Insurance Company, Liberty Life Assurance Company, Knight-Ballou, Stalk, and Evans, and direct

that the RICO claim be served against Knight-Ballou, Stalk, and
Evans.

<u>Standard of Review</u>

Under this Court's local rules, when a plaintiff commences
an action pro se and in forma pauperis, the magistrate judge is
directed to conduct a preliminary review and to, if appropriate:

> report and recommend to the court that the filing be
> dismissed because the allegation of poverty is untrue,
> the action is frivolous or malicious, fails to state a
> claim upon which relief may be granted, or seeks
> monetary relief against a defendant who is immune from
> such relief under 28 U.S.C. § 1915e(2); or it fails to
> establish subject matter jurisdiction under Fed. R. Civ.
> P. 12(b)(1).

LR 4.3(d)(1)(B)(I).  In conducting the preliminary review, the
Court construes pro se pleadings liberally.  <u>See</u> <u>Ayala Serrano v.
Lebron Gonzales</u>, 909 F.2d 8, 15 (1st Cir. 1990) (following
<u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) to construe pro se
pleadings liberally in favor of the pro se party).  "The policy
behind affording pro se plaintiffs liberal interpretation is that
if they present sufficient facts, the court may intuit the
correct cause of action, even if it was imperfectly pled."  <u>Ahmed
v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997), <u>cert. denied</u>,
<u>Ahmed v. Greenwood</u>, 522 U.S. 1148 (1998).

3

At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that pro se pleadings are given fair and meaningful consideration.  See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988).

## Background[3]

Few is a 56 year old African-American woman with multiple sclerosis, arthritis in her neck, spine, and knees, depression, and impairment of her short term memory.[4]  Few claims that her medical condition is worsening as she ages.

---

[3]Many of the facts alleged by Few were stated in vague and non-specific terms.  Construing the complaint liberally, as I must, I have attempted to accurately reflect in this Report and Recommendation the substance of Few's factual allegations.  If Few disagrees with the facts as recounted, she should do so by properly objecting to this Report and Recommendation or by properly moving to amend her complaint.

[4]Few also must be monitored for multiple myeloma, a cancer of the blood plasma, for the remainder of her life, and has elevated muscle enzymes.  It is unclear whether or how these additional conditions have impacted Few's disability.

4

Few was employed by Liberty in the 1980s.  Few has been covered by a life insurance policy issued by Liberty since at least 1988.  In May of 1990, while employed as a "retro rater" in Liberty's Dover, New Hampshire office, Few became disabled and unable to work.

It appears that because of her total disability, Liberty paid the premiums for Few's life insurance policy from the time that Few became unable to work until 2005, when Liberty terminated Few's policy.  Under the terms of Few's policy, Liberty required Few to periodically provide proof of her continued disability in order to maintain Liberty's payment of Few's life insurance premiums.  At times, Few states that a 1995 Medicare declaration of total disability was accepted by defendants as proof of Few's continued disability.

From 1990 through 1999, while Few was totally disabled, the defendants paid the premiums on Few's insurance policy without complaint.  In 1999, Few requested a copy of her life insurance policy from Liberty.  Few, upon reviewing the policy, discovered that, due to her disability, she could request a payment of $25,000 as a benefit of her policy.  Few requested the $25,000 payment.

Shortly after Few's request, in 2000, service of Few's policy began to be handled by Jolene Knight-Ballou in Liberty's legal department.  Knight-Ballou, according to Few, began to make "unnecessary and illegal demands" on Few.  Knight-Ballou also began to threaten Few with cancellation of her life insurance policy, worth $66,000, if Few failed to comply with Knight-Ballou's demands.  Another Liberty legal department employee, Linda Stalk, also became involved in the administration of Few's policy and began using the same threatening tactics employed by Knight-Ballou.

Few alleges that, beginning in 2005, she was ordered to attend medical appointments and provide medical records that exceeded both the time frame during which such a request could be made, and the number of appointments that Liberty could require Few to attend under the terms of the insurance policy.  Few contends that her policy permitted Liberty to request proof of plaintiff's continued disability during a period of three months preceding the April 28 anniversary of plaintiff's placement on long-term disability.[5]  Further, Liberty was only allowed to request that plaintiff see a doctor once a year.  Although Few

---

[5]Plaintiff was placed on long-term disability on April 28, 1992.

does not detail specific incidents that occurred between 2000 and 2005, it appears that the defendants' threatening tactics continued during that period.

In April of 2005, Plaintiff attended a doctor's appointment at the request of Liberty.  Liberty scheduled additional appointments for Few, but Few refused to attend those appointments on the grounds that they created more of an imposition on Few's life than she was required to tolerate under the policy.

On July 1, 2005, defendants cancelled Few's insurance policy.  Few received notice of the cancellation on July 5, 2005, by letter advising her that Liberty had decided to close her account, and that she had until July 31 to convert her life insurance policy with Liberty to an individual insurance policy.[6] The stated reasons for the cancellation were that Few was alleged not to have attended medical appointments that Liberty had ordered her to attend.

---

[6]The July 1, 2005 letter also stated that Few's employment at Liberty had been terminated on April 28, 1992, when she began receiving long-term disability insurance.  Few had not, prior to receiving that letter, ever received written notification of the termination of her employment.

Few alleges that, per the instructions provided to her by defendants at the time they notified Few of the cancellation of her policy, she filed a timely appeal of the cancellation of her insurance policy on August 29, 2005, which was within sixty days of the issuance of the cancellation notice. Few alleges that, during the pendency of the appeal, defendants again requested that, among other things, she attend additional medical appointments and surrender all of her medical records generated since February of 2004. Few alleges that while she did satisfy all of the requests made of her that she was required to satisfy under the terms of her policy, the requests made by Liberty during the appeals process continued to exceed that which the policy permitted Liberty to demand.

By letter dated October 14, 2005, Few was notified that her appeal was denied. Few then filed a complaint with the New Hampshire Department of Insurance ("NHDI"). The NHDI, according to Few, was unable to understand the language of Few's insurance policy or the laws under which defendants claimed authority for their actions. Few asserts that this confusion was, in part, because defendants Knight-Ballou, Stalk, and Evans intentionally supplied misleading and/or false information to the NHDI for

consideration.  For example, Few alleges that the terms of her
insurance policy allow Liberty "to have a physician it designates
examine [Few] whenever it may reasonably require during [her]
disability, but not more often [than] once a year after [Few]'s
insurance has been continued for two full years."  However, Few
charges, defendants falsely advised NHDI only that the terms of
the policy were that "[Liberty] shall have the right to a
physician it designates examine [Few] whenever it may reasonably
require."  Ultimately, the NHDI denied plaintiff's claim on the
grounds that they "can't tell [defendants] what to do."

Few asserts that she has made every effort to exhaust the
ERISA claim by appeal to the defendants and to the NHDI.  Few
asserts, however, that her efforts have been thwarted both by the
false and/or misleading information provided to the NHDI by
defendants' employees, and by Stalk and Knight-Ballou's failure,
on several occasions, to provide Few with documents, to which she
is entitled, either altogether or in a timely fashion.
Additionally, Few claims that she has been provided with a number
of different versions of her policy, including versions relating
to a health insurance policy, although Few has never held a
health insurance policy with Liberty.

Few's complaint states her belief that the defendants'
actions were motivated by racial discrimination which, Few
claims, extends from and continues racial harassment that Few
experienced when she worked at Liberty in 1989 and 1990.
Further, Few believes that defendants' actions were
discriminatorily taken based on Few's age.  Few claims that when
she turns sixty, under the terms of the policy at issue here, she
no longer has to submit proof of continued disability in order to
maintain Liberty's payment of her policy premiums as a benefit.
Few believes that Liberty wrongly cancelled her life insurance
policy in an effort to make sure that Few did not turn sixty
while covered by the policy.

<u>Discussion</u>

I.   <u>ERISA Claim</u>[7]

---

[7]The ERISA statute "shall supersede any and all State laws
insofar as they may now or hereafter relate to any employee
benefit plan" covered by ERISA.  29 U.S.C. § 1144(a).  ERISA's
preemption provision is expansive, but does not "extend to the
furthest stretch of its indeterminacy."  <u>Egelhoff v. Egelhoff ex
rel. Breiner</u>, 532 U.S. 141, 146 (2001).  "[A] State law relates
to an ERISA plan 'if it has a connection with or reference to
such a plan.'"  <u>Id.</u> at 147 (quoting <u>Shaw v. Delta Air Lines,
Inc.</u>, 463 U.S. 85, 97 (1983)).  Because I find that Few has
stated a claim under ERISA upon which relief might be granted,
her State law claims that relate to her employee benefit plan are
pre-empted by her ERISA claim.  Few's State law claims that arise
out of laws of general application, that only have an incidental
effect on the administration of the ERISA plan in question here,

The primary purpose of the ERISA statue is to provide "administrative oversight" of employee benefit plans.  <u>N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.</u>, 514 U.S. 645, 651 (1995).  ERISA was enacted to protect the interests of participants in employee benefit plans.  <u>Johnson v. Watts Regulator Co.</u>, 63 F.3d 1129, 1132 (1st Cir. 1995).  Few claims that her interest in a benefit plan supplied to her by her former employer, and continued for her by that employer as a benefit accruing to her as a result of her total disability, was wrongly terminated by the defendants.  As such, she brings this claim pursuant to ERISA.

---

are not pre-empted.  <u>See</u> <u>Egelhoff</u>, 532 U.S. at 147–48.  At this preliminary stage of review, it would be premature to attempt to delineate the precise contours of ERISA preemption as it applies to this case.  It is clear, however, that at least two of Few's State law claims, her breach of insurance contract claim and her claim raised under New Hampshire's Insurance Act, are directly related to Few's ERISA plan.  Accordingly, I recommend dismissal of the breach of insurance contract and Insurance Act claims.

Additionally, Few alleges a claim of wrongful termination. Few bases the wrongful termination claim on the defendants' alleged failure to properly notify Few of her termination.  I find that this claim, too, is connected to or relates directly to Few's ERISA claim, as she apparently challenges her termination only insofar as it affects the administration of the benefits in question here.  I therefore recommend that the wrongful termination claim be dismissed.  If this Report and Recommendation is approved, the dismissal of these claims will be without prejudice to refiling in a court of appropriate jurisdiction should it later be determined that the ERISA claim raised here will not act to pre-empt these State law claims.

In order to state a claim under ERISA, plaintiff must allege that she has been improperly denied benefits under a "welfare benefit plan" as defined under 29 U.S.C. § 1002(1) of ERISA.  See Robles v. Combined Ins. Co. of Am., 275 F. Supp. 2d 168, 170 (D.P.R. 2003).  "A welfare benefit plan is made up of five elements: (1) a plan, fund, or program (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vocation benefits, day care centers, scholarship funds, prepaid legal services, or severance benefits (5) to participants or their beneficiaries."  Id. (citing 29 U.S.C. § 1002(1)) (internal quotations omitted); see also 1A Couch on Ins., § 7:16 (3d ed. 2006) (setting out elements of ERISA claim). A "participant" is "any employee or former employee of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . or whose beneficiaries may be eligible to receive any such benefit."  29 U.S.C. § 1002(7).

Few alleges that she is a "participant," as that term is defined by § 1002(7), as she is a former employee of Liberty who

has become eligible to receive benefits from an employee benefit plan.  Further, Few sufficiently alleges facts to establish that the plan in question is a "welfare benefit plan" as defined by § 1002(1), that she is covered by that plan, and that the life insurance plan in question here was either "established or maintained" by "an employer."  <u>See</u> 29 U.S.C. § 1002.  Few has alleged that for at least ten years she received the benefit of the plan in question.  Few further states that the plan was providing her with disability benefits in the form of payment of her life insurance premiums, and that she, as the participant, was the recipient of the benefits.  Finally, Few alleges that her benefits were wrongly terminated by her former employer.  Accordingly, I find that the allegations set forth in Few's complaint set out the elements of an ERISA claim.  Without commenting on the merits of that claim, I will direct, in the Simultaneous Order, that the ERISA claim be served on defendants.

II.  <u>RICO claim</u>

Few claims that Knight–Ballou, Stalk, and Evans unlawfully conspired to commit certain acts, in violation the provisions of the RICO statute, which provides that:

> it shall be unlawful for any person employed
> by or associated with any enterprise engaged

> in, or the activities of which affect,
> interstate or foreign commerce, to conduct
> or participate, directly or indirectly, in
> the conduct of such enterprise's affairs
> through a pattern of racketeering activity
> or collection of unlawful debt.

18 U.S.C. § 1962(c).  To state a private cause of action under

RICO, a plaintiff must allege: (1) the existence of an

enterprise[8]; (2) that the defendants were employed by or

associated with the enterprise; (3) that the enterprise engaged

in, or the activities of the enterprise affected, interstate

commerce; (4) the employees conducted the enterprise's affairs

through a "pattern of racketeering activity;" and (5) which is

causally related to the harm alleged.  <u>Miranda v. Ponce Fed.</u>

<u>Bank</u>, 948 F.2d 41, 44 (1st Cir. 1991).

A pattern of racketeering activity is one involving the

commission by named defendants of at least two predicate acts

enumerated in the RICO Statute, the second of which must occur

within ten years of the first.  <u>Ahmed</u>, 118 F.3d at 889.

Predicate acts include any act or threat involving one of a

number of recognized indictable offenses.  <u>See</u> 18 U.S.C. §

_____

[8]An enterprise is defined to include 'any individual,
partnership, corporation, association, or other legal entity, and
any union or group of individuals associated in fact although not
a legal entity.'"  <u>Ahmed</u>, 118 F.3d at 889; 18 U.S.C. § 1961(4).

1961(1); <u>Ahmed</u>, 118 F.3d at 888.  To support the pattern
requirement, a plaintiff must show that either the related
predicate acts "amounted to" continued criminal activity or that
there was a significant possibility that the criminal activity
would continue in the future.  <u>Ahmed</u>, 118 F.3d at 889.

     A.   <u>The Liberty Defendants</u>

     Few alleges that Liberty Life Assurance Company and Liberty
Mutual Insurance Company, as corporations, are the enterprises
benefitting from a racketeering scheme perpetrated by its
employees Knight-Ballou, Stalk, and Evans.  Because she has
alleged that the Liberty defendants are corporations, they
constitute an "enterprise" under § 1961(4).

     A culpable person subject to liability under RICO must be
"employed by or associated with" the RICO enterprise and "the
same entity cannot do double duty as both the RICO defendant and
the RICO enterprise."  <u>Miranda</u>, 948 F.2d at 44 (citations
omitted).  Because the racketeer and the enterprise must be
distinct, Few's RICO claim against the Liberty defendants, who
constitute the enterprise, cannot succeed.  I therefore recommend
that the Liberty defendants be dismissed as defendants from the

RICO claim.[9]  As explained below, the RICO claim can, however, proceed against Knight-Ballou, Stalk, and Evans.

    B.   <u>Liberty Employees: Knight-Ballou, Stalk, and Evans</u>

Individual officers or employees of the enterprise, acting within the scope and course of their employment, may be culpable as racketeers and subject to liability for civil RICO violations. <u>Id.</u>  As stated above, in order to properly state a claim against the individual Liberty employees, Few must allege that each of the defendants engaged in a pattern of "racketeering activity" which resulted in the harm she alleges.  <u>Id.</u> at 44.

Liberally construing Few's claims regarding Knight-Ballou, Stalk, and Evans, I find that Few has properly alleged that each of these defendants have committed two or more indictable acts to subject them to liability under RICO, as those acts are alleged to have resulted in the harm of which Few complains. Specifically, Few alleges that each of these individual defendants, in furtherance of their efforts to wrongfully deny benefits to Few, provided, by phone, fax, and mail, false and/or misleading information to the NHDI.  Few claims that these

---

[9]Although not specifically raised as a theory of liability by Few, it should be noted that 18 U.S.C. § 1962(c) does not recognize the liability of the enterprise under a theory of respondeat superior.  <u>Miranda</u>, 948 F.2d at 45.

actions amount to both mail fraud[10] and wire fraud,[11] both of

---

[10]18 U.S.C. § 1341 defines mail fraud as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.  If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

[11]18 U.S.C. § 1343 defines wire fraud as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate

which are among the enumerated predicate acts which can establish
a pattern of racketeering activity under RICO.  <u>See</u> 18 U.S.C. §
1961(1)(B) (listing offense which can constitute predicate acts
to satisfy racketeering element of RICO claim).  Few alleges
that, as a result of these acts, her appeal before the NHDI was
wrongfully denied.  She further claims that the wrongful denial
of benefits was achieved by the individual defendants' numerous
acts of extortion,[12] in the form of threats that she would lose
her insurance policy if she failed to comply with the
unreasonable demands of the defendants that were designed to
force the cancellation of her policy.  <u>Id.</u>

All of the alleged acts of mail fraud, wire fraud, and
extortion occurred within the last seven years, satisfying the
"within ten years" time frame of the pattern requirement.

---

or foreign commerce, any writings, signs, signals,
pictures, or sounds for the purpose of executing
such scheme or artifice, shall be fined under this
title or imprisoned not more than 20 years, or
both.  If the violation affects a financial
institution, such person shall be fined not more
than $1,000,000 or imprisoned not more than 30
years, or both.

[12]Extortion is defined as "the obtaining of property from
another, with his consent, induced by wrongful use of actual or
threatened force, violence, fear, or under color of official
right."  18 U.S.C. § 1951(b)(2).

Further, Few alleges that the acts of mail fraud, wire fraud, and extortion are the proximate cause of the harm alleged, which is the loss of benefits and the cancellation of a $66,000 life insurance policy, which resulted from the improper tactics of the defendants.

Few has also sufficiently alleged that the Liberty defendants are involved in interstate commerce, that the conduct of the individual defendants amounted to continued criminal activity, that the individual defendants' conduct will result in the continued denial of benefits, and that the acts in question were intentionally inflicted in order to wrongfully deprive Few of benefits to which she is entitled.  These allegations sufficiently to state a RICO claim to allow that claim to go forward at this time.  In my Simultaneous Order, therefore, I will direct service of the RICO claim against defendants Knight-Ballou, Stalk, and Evans.

III. FOIA Claim

"FOIA requires government agencies to 'make ... promptly available' to any person, upon request, whatever 'records' the agency possesses unless those 'records' fall within any of nine listed exemptions.  5 U.S.C. § 552(a)(3)."  Church of Scientology

Int'l v. DOJ, 30 F.3d 224, 228 (1st Cir. 1994); DOI v. Klamath
Water Users Protective Ass'n, 532 U.S. 1, 7 (2001) ("Upon
request, FOIA mandates disclosure of records held by a federal
agency.").

FOIA only gives rise to a private cause of action if a
proper request for information is made to and then denied by a
federal agency.  See 5 U.S.C. § 551(1) (defining the meaning of
"agency" for FOIA purposes).  The defendants here are private
corporations and individuals, and not federal agencies.
Accordingly, the defendants had no obligation arising under FOIA
to provide Few with information, and I recommend that the FOIA
claim be dismissed from this action.

IV.   Age and Race Discrimination Claims

Few has alleged generally that she believes that the actions
taken by the defendants in regard to the cancellation of her
insurance policy were motivated by discrimination based on Few's
age and race.  To support this allegation, Few points only to her
own subjective belief that she has been discriminated against.
Few's beliefs are not supported in the complaint by any factual
allegations or cited incidents that would give rise to the

inference that the defendants intended to discriminate against Few in the provision of life insurance benefits.

In filing a civil rights complaint, a "claim must at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why." Guglielmo v. Cunningham, 811 F. Supp. 31, 35 (D.N.H. 1993) (quoting Dewey v. Univ. of N.H., 694 F.2d 1, 3 (1st Cir. 1982), cert. denied, 461 U.S. 944 (1983)); accord Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995) ("Even pro se litigants must do more than make mere conclusory statements regarding constitutional claims.") (internal citations omitted). Because I find that Few's allegations of discrimination do no more than state conclusory claims based on Few's subjective beliefs, I recommend that the age and race discrimination claims be dismissed.

V.   Federal Constitutional Claims

Few claims that the defendants, all private entities, have violated her federal constitutional rights. Specifically, Few alleges that defendants violated her Fourth Amendment right not to have her person illegally seized, her Eighth Amendment right not to be subjected to cruel and unusual punishment, and her Fourteenth Amendment due process rights, as well as her federal

constitutional right "to the [p]ursuit of [h]appiness," by
requiring her to attend medical appointments beyond those
permitted by Few's insurance policy.

The United States Constitution "erects no shield against
merely private conduct, however . . . wrongful." Blum v.
Yaretsky, 457 U.S. 991, 1002 (1982).  A plaintiff claiming an
infringement of her civil rights must establish that (1) the
defendants deprived plaintiff of a right secured by the
Constitution or laws of the United States, and that (2) the
defendants acted under "color of any statute, ordinance,
regulation, custom, or usage, of any State or Territory or the
District of Columbia."  42 U.S.C. § 1983.  In relation to the
second requirement, a private actor can be held to be a State
actor under only three circumstances: "(i) where there is a
sufficiently close nexus between the state and the challenged
action of the private party so that the action of the party may
be fairly treated as that of the state itself, (ii) where the
private party has exercised powers that are 'traditionally the
exclusive prerogative of the state,' or (iii) where the state has
exercised coercive power or has provided such significant
encouragement, either overt or covert that the action of the

private party must in law be deemed to be that of the state."
Lewis v. Law-Yone, 813 F. Supp. 1247, 1254 (N.D. Tex. 1993)
(quoting Blum, 457 U.S. at 1004); see also Jackson v. Metro.
Edison Co., 419 U.S. 345, 357 (1974).  Here, Few alleges no facts
that would allow me to consider, even for purposes of preliminary
review, that the defendants here are State actors.  Accordingly,
Few cannot state a claim against defendants for violations of her
federal constitutional rights, and I recommend that those claims
be dismissed from this action.

VI.   Claims Based on State Law

    A.   Defamation, Slander, and Libel Claims

Few has alleged State law claims of defamation, libel, and
slander, alleging that some representation made by defendants to
the NHDI defamed her.  Under New Hampshire law, "[t]o establish
defamation, there must be evidence that a defendant . . .
published . . . a false and defamatory statement of fact about
the plaintiff to a third party."  Moss v. Camp Pemigewassett,
Inc., 312 F.3d 503, 507 (1st Cir. 2002).  "A statement is
defamatory if it 'tends to lower the plaintiff in the esteem of
any substantial and respectable group of people.'"  Id. (citing
Nash v. Keene Publ'g Corp., 127 N.H. 214, 219 (1985)).  While Few

alleges that defendants made some defamatory statement to the NHDI, she fails to specify what the statement was, how it was false, and how it defamed her.  Few further fails to identify any substantial and respectable group of people whose opinion of Few would be lowered by whatever defendants said to the NHDI in opposition to Few's appeal.  Accordingly, I find that Few's claims alleging defamation, slander, and libel do not suffice to state a claim upon which relief may be granted, and I recommend that those claims be dismissed.[13]

B.   <u>Intentional Infliction of Emotional Distress</u>

In any civil action of which the district court has original jurisdiction, the court also has jurisdiction over all other claims that are so related to the claims in the action within the original jurisdiction that they form part of the same case or controversy.  28 U.S.C. § 1367(a).  Few alleges generally that the defendants, by their actions, intentionally caused her to suffer from emotional distress, and that she did suffer from emotional distress as a result of the harm she alleges the

---

[13]Few lumps the defamation, libel and slander claims together in her complaint.  Because she appears to intend that all of these claims should arise out of statements made to NHDI by defendants, my finding that the allegations regarding these claims are insufficient to support a defamation claim applies to any intended slander or libel claim as well.

defendants caused to her in wrongfully cancelling her insurance policy.  The intentional infliction of emotional distress claim is appropriately ordered served on defendants pursuant to this Court's pendant jurisdiction, and I will so direct in my Simultaneous Order.

      C.   <u>Unspecified Violations of State Law</u>

Few alleges additional theories of defendants' civil liability under State law.[14]  Few alleges generally that her rights under the State laws of New Hampshire, Virginia, Washington, Oregon, and Florida have been violated by defendants' actions.  Few is not specific as to what acts have violated which laws of these states, and I therefore recommend that, to the extent that Few has not named any specific cause of action under which her State law rights arise, that the State law claims be dismissed.

<u>Conclusion</u>

For the reasons stated herein, I recommend dismissal of the FOIA, age discrimination, race discrimination, Fourth Amendment, Eighth Amendment, Fourteenth Amendment, and miscellaneous federal

---

[14]As previously noted, I will not at this time address claims that I have determined would be pre-empted by Few's ERISA claims.

constitutional claims, as well as State law claims alleging
violations of the Insurance Act, breach of contract, wrongful
termination, defamation, slander, libel, and general unspecified
violations of the laws of New Hampshire, Virginia, Washington,
Oregon, and Florida from this action.  In my Simultaneous Order,
I direct service of the ERISA, RICO, and intentional infliction
of emotional distress claims on defendants as described in that
Order.

Any objections to this report and recommendation must be
filed within ten (10) days of receipt of this notice.  Failure to
file objections within the specified time waives the right to
appeal the district court's order.  See Unauthorized Practice of
Law Comm. v. Gordon, 979 F.2d 11, 13–14 (1st Cir. 1992);
United States v. Valencia–Copete, 792 F.2d 4, 6 (1st Cir. 1986).


_____
James R. Muirhead
United States Magistrate Judge

Date:     May 16, 2007

cc:       Sharon Few, pro se

26